WALTER F. WHILDEN and RUTH K. WHILDEN,
Plaintiffs,

*vs.*

PAUL F. RICHIE and JEAN RICHIE,
Defendants.

*New Castle, September 18, 1964.*

*Carroll F. Poole*, Wilmington, for plaintiffs.

*Arthur W. Koffenberger, Jr.,* and *Jay H. Conner,* of Keith & Koffenberger, Wilmington, for defendants.

SEITZ, Chancellor : This is an action for specific performance of a contract by which plaintiffs agreed to convey to defendants a good marketable fee simple title to certain real estate. Defendants resist the action on the ground that plaintiffs cannot convey the requisite title. The parties supplemented the record factually and then both sides moved for summary judgment and this is the decision thereon. I now consider the undisputed facts which give rise to this controversy.

In 1946 a plat was recorded of a development known as Normandy Manor. The plat showed most of the area subdivided for residential use but a portion thereof was marked "PARK".

In 1955, plaintiff purchased from the developer a portion of the land marked "PARK". Later, but before commencement of this action, the developer and every landowner in Normandy Manor executed certain quitclaim deeds by which for themselves, their survivors, heirs and assigns, they quitclaimed any right in the land conveyed to plaintiffs. Plaintiffs have paid taxes on the land and performed landscaping and other work on the property. No public agency has done any work or executed any control over the area marked "PARK". Nor does any such agency claim any title or interest in such land.

Defendants contend that delineation of the area as "PARK" in the plat approved by the County Regional Planning Commission and Levy Court and recorded in the Office of the County Recorder of Deeds constitutes a dedication or an offer to dedicate such area for public use and enjoyment. Thus, they say it is a cloud on plaintiffs'

title which precludes them from conveying good title. Plaintiffs argue that use of the word "PARK" in the recorded plat did not constitute the grant of any right to the general public sufficient to create a cloud upon the title and they say the landowners in the development have waived any rights they may have had therein.

■ Preliminarily, although defendants argue that it should be construed to be applicable, I am satisfied that 9 *Del.Ch.* § 2510 does not apply to the present problem since it deals only with the dedication of roads on recorded plats. The effect then of the delineation of a certain portion of the recorded plat as "PARK" must be determined under general legal principles and is not controlled by any statute.

Plaintiffs seem to argue first that the dedication, if there was any, was for the use of the inhabitants of the development and not the general public.

■■ Absent some language in the controlling instrument, inter alia, evidencing such an intent, I do not believe that the general public is without any rights in a legally dedicated public park. Compare *Northport Wesleyan Grove Campmeeting Ass'n v. Andrews*, 104 *Me.* 342, 71 *A.* 1027, 20 *L.R.A., N.S.*, 976. Since the language of the plat plan here involved does not delimit those who might use the park, I do not believe its use was confined solely to the residents of the development. It follows that the obtaining of the quitclaim deeds from all the residents did not automatically destroy of record what amounted at least to an offer to dedicate the area in question for a park.

■ The evidence shows without dispute that plaintiffs own land which of record ("PARK") the developer offered to dedicate to the general public. At the time plaintiffs contracted to sell their property and convey "good" title, there was a cloud thereon represented by the recorded offer to dedicate. Whether it was ever "accepted" by appropriate public user is not important because, in any event, there is nothing of record to show that the offer has been withdrawn. The selling of the land to plaintiff was not a sufficiently unequivocal act that the court would be justified in saying that there was no cloud. Thus, the plat as it now stands creates a record cloud which prevents plaintiffs from conveying the kind of title they agreed to provide.

Plaintiffs' motion for summary judgment must be denied and defendants' motion granted. Consequently, plaintiffs are not entitled to specific performance.

In the interest of clarity I emphasize that this problem arises in an action for specific performance and thus the court is concerned only with the title tendered. This is not an action to determine whether the cloud can or should be removed from plaintiffs' title.

Present order on notice.